COURT OF APPEALS
DECISION
DATED AND FILED

October 31, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP440**

Cir. Ct. No. **2020CV36**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

JEFFREY KUCZMARSKI AND ELISE SKUBAL,

PLAINTIFFS-RESPONDENTS,

V.

ERIN KUCZMARSKI AND HOLLY L. HARPER SPECIAL NEEDS TRUST,

DEFENDANTS-APPELLANTS.

---

APPEAL from an order of the circuit court for Oneida County: MICHAEL H. BLOOM, Judge. *Affirmed and cause remanded with directions.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Erin Kuczmarski and the Holly L. Harper Special Needs Trust (hereinafter, "the Holly Trust") appeal a circuit court order requiring

the sale of real property located in the Town of Crescent in Oneida County. Erin and the Holly Trust argue that the court erred by finding that partition of the property was impossible, by staying Erin and the Holly Trust's motion for leave to file an amended counterclaim, and by finding that the property could be sold despite a portion of Jeffrey Kuczmarski's garage being located on the property. We reject these arguments and affirm.

¶2 Jeffrey Kuczmarski and Elise Skubal have also moved for sanctions against Erin and the Holly Trust, arguing that this appeal is frivolous.[1] We conclude that Erin and the Holly Trust's appeal is frivolous, and we therefore grant Jeffrey and Elise's motion. We thus remand this matter to the circuit court to determine and award costs, fees, and attorney fees associated with this appeal.

## BACKGROUND

¶3 Three siblings—Jeffrey, Elise, and Erin—and the Holly Trust own real property (hereinafter, "the Kuczmarski property") located on Emma Lake in the Town of Crescent.[2] The siblings inherited the Kuczmarski property after their father's death in 2006, and they own the property as tenants in common. The Kuczmarski property is 14.5 acres in size and has 353 feet of lake frontage. The property consists of a north parcel and a south parcel. Jeffrey owns a 50% interest in the north parcel,[3] and Erin and the Holly Trust each own a 25% interest in the

---

[1] For ease of reading, we will refer to the parties by their first names throughout the remainder of this opinion.

[2] The Holly Trust is a trust created for the benefit of Holly Harper. Erin is the Trust's representative. Holly is one of the Kuczmarski siblings, but her interest in this action is represented by the Holly Trust.

[3] Elise sold her 25% interest in the north parcel to Jeffrey.

north parcel. Jeffrey, Elise, Erin, and the Holly Trust each own a 25% interest in the south parcel. The north parcel includes a portion of a garage that Jeffrey built straddling the Kuczmarski property and his neighboring property.

¶4 For several years, the siblings have been unable to agree on whether to use or dispose of the Kuczmarski property. For this reason, Jeffrey and Elise brought an action against Erin and the Holly Trust seeking a partition of the Kuczmarski property or, in the alternative, a sale of the property. Erin and the Holly Trust filed a counterclaim against Jeffrey and Elise alleging that Jeffrey illegally created encroachments on the Kuczmarski property and that he knew about the encroachments when they were created. Erin and the Holly Trust later filed a motion seeking leave to file an amended counterclaim alleging additional claims against Jeffrey regarding the illegally created encroachments. The claims related to Jeffrey's garage and his failure to disclose the garage's existence to his siblings.

¶5 The circuit court held a bench trial at which both parties presented witnesses. On behalf of Jeffrey and Elise, the court heard testimony from James Rein, Sr., Jeffrey Olson, Jeffrey, and Elise. On behalf of Erin and the Holly Trust, the court heard testimony from Joel Knutson, Scott Ridderbusch, and Timothy Vreeland.

¶6 Rein, a land surveyor, testified that he was asked to divide the Kuczmarski property into four parcels and determine the maximum number of lake lots that could be created based on the applicable Oneida County zoning ordinance (hereinafter, "the Oneida ordinance") and the applicable Town of Crescent subdivision ordinance (hereinafter, "the Crescent ordinance"). The Oneida ordinance requires each lakefront lot to have a minimum area of 20,000

square feet and at least 100 feet of lake frontage. The Crescent ordinance, meanwhile, requires each lakefront lot to have a minimum area of 90,000 square feet and at least 225 feet of lake frontage. The Crescent ordinance also requires any off-water lot to be at least five acres in size.

¶7    Rein further testified that to comply with the Oneida ordinance, the maximum number of lake lots that could be created was three lots. Under the Crescent ordinance, Rein testified that the maximum number of lake lots that could be created was one lot. Rein added that three off-water lots could not be created because those lots would not satisfy the five-acre minimum requirement. Thus, Rein concluded that under the Crescent ordinance, the Kuczmarski property could not be partitioned among the four owners.

¶8    Vreeland, also a land surveyor, testified that the Kuczmarski property could be potentially divided into four lots under the Oneida ordinance. On cross-examination, Vreeland admitted that he was not aware of the Crescent ordinance and only became aware of that ordinance when this action was filed. Vreeland also admitted that under the Crescent ordinance, three of the four lots necessary for a partition could not be created. Similarly, Ridderbusch, a land use specialist for the Oneida County Zoning Department, testified that the Kuczmarski property could be potentially divided into three lake lots and one off-water lot under the Oneida ordinance. On cross-examination, Ridderbusch testified that he was aware of the Crescent ordinance and that the town could enforce a stricter partition of the Kuczmarski property under that ordinance.

¶9    Olson, an appraiser, testified that if one strictly looked at the "quality and quantity" of the Kuczmarski property, "it would be nearly impossible to divide that equally." Olson also testified that the value of a lakefront property is

4

significantly higher than the value of an off-water property. Rein and Vreeland similarly testified that a lakefront property was of greater quality and of much higher value than an off-water property. Olson concluded that if the Kuczmarski property were partitioned, the owners who received a lake lot would have a lot with greater quantity and quality than the owners who received an off-water lot. Olson also concluded that, given these realities, the property could not be partitioned among the four owners.

¶10 Knutson, the town chair for the Town of Crescent, testified that, in the past, the town had been inconsistent in applying its own ordinances to partitions. Knutson also testified that the town had a history of approving lot sizes that were inconsistent with the town's ordinances. Knutson further testified that, at the time of the trial, the Crescent ordinance requiring 225 feet of lake frontage remained the town's current ordinance. Finally, Knutson testified that he could not speculate what the outcome would be if the town considered either a variance or a rewrite of its ordinance.[4]

¶11 With respect to the portion of the garage located on the north parcel, Jeffrey testified, on cross-examination, that his father, years before his death, gave Jeffrey permission to build a portion of the garage on the north parcel. Specifically, Jeffrey testified: "My dad gave me permission. He said, '[t]ake whatever you need. You need an acre, 100 feet, take whatever you want.'" Jeffrey further testified that he disclosed the fact that a portion of his garage was

---

[4] Knutson testified that his personal preference was to keep the ordinance requirement at 225 feet of lake frontage, but, again, he said that he could not speak to the town board's preference.

built on the north parcel—and done so with their father's approval—to his siblings both before and at their father's funeral.

¶12     To summarize the key points from the foregoing, the trial evidence was undisputed that, under the Crescent ordinance, if the Kuczmarski property were partitioned into four lots, only one of those lots would be a lot with lake frontage, while the remaining three lots would be off-water lots.  However, because the Crescent ordinance requires off-water lots to be a minimum of five acres in size, the property is not large enough to create three off-water lots that comply with the minimum size requirement.  It was also undisputed that, under either the Oneida ordinance or the Crescent ordinance, at least one owner would receive an off-water lot, which is of much less value than a lot with lake frontage. Finally, no evidence was presented to dispute Jeffrey's testimony that the siblings knew about Jeffrey's garage on the property and that he built the garage with their father's permission.

¶13     In an oral ruling, the circuit court concluded that, under *State ex rel. Anderson v. Town of Newbold*, 2021 WI 6, 395 Wis. 2d 351, 954 N.W.2d 323, the Crescent ordinance applied to a partition of the Kuczmarski property.  It also concluded that, "in absence of a variance or an amendment of the ordinance by the Town, or other action or inaction by the Town," the Crescent ordinance precluded the creation of more than one partition parcel with lake frontage.  The court based this conclusion on Rein's, Olson's and Knutson's testimony.

¶14     The circuit court then found that if only one owner received a lot with lake frontage, "at least one of the other [owners] would suffer substantial economic loss."  The court believed this finding was supported because "[t]he record in this case is replete with testimony to the effect that a parcel with lake

frontage is substantially more valuable than an inland parcel." The court also found that Erin and the Holly Trust did not present any evidence to refute testimony regarding the difference in value between lakefront property and off-water property. Instead, the court continued, Erin and the Holly Trust only presented evidence on the potential for partitioning the Kuczmarski property in compliance with the Oneida ordinance.

¶15 For these reasons, the circuit court found that a partition of the Kuczmarski property was not possible under the Crescent ordinance without prejudice to one or more of the owners. The court thus concluded that a partition of the Kuczmarski property was impossible and that a judicial sale of the property was the required remedy.

¶16 The circuit court further found that it could not speculate as to any potential future action or inaction by the Town of Crescent regarding the enforcement of the Crescent ordinance, a potential grant of a variance from that ordinance, or a potential amendment of that ordinance to conform to the Oneida ordinance. The court explained that nothing in Knutson's testimony provided the court with a sufficient basis to find that the Crescent ordinance would be amended in the near future "or that the Town will or will not do anything in the foreseeable future that might foreclose application of the current … ordinance to the parcels in this case." The court added it could not assume "that partition might not be impossible" simply because the town might or might not do something in the future. Thus, the court concluded that the Crescent ordinance, as it existed at that time, must be presumed to be the law applied to any potential partition of the Kuczmarski property.

¶17    Finally, the circuit court found that while Jeffrey's testimony alluded to the issue of encroachments regarding the garage, the issue "was not really litigated actively by the parties during the bench trial."  The court noted there was no evidence or claims that supported anything other than a conclusion that the Kuczmarski property would be sold "as is, which includes anything on the parcels as currently divided and surveyed, which apparently includes [Jeffrey's] garage."  Thus, the court found that the record did not support it "taking any other action in connection with any encumbrance or the presence of a building supposedly belonging to [Jeffrey] on the parcel that is to be sold."  Erin and the Holly Trust now appeal.

**DISCUSSION**

**I.  The circuit court's partition decision**

¶18    While partition of real property is codified in the Wisconsin Statutes, "it remains an equitable remedy."  ***Prince Corp. v. Vandenberg***, 2016 WI 49, ¶16, 369 Wis. 2d 387, 882 N.W.2d 371.  Because partition is an equitable remedy, "we review the circuit court's partition decision under the 'highly deferential' erroneous exercise of discretion standard."  ***Id.*** (citation omitted).  Under this standard of review, we "uphold the circuit court's discretionary determination as long as the circuit court 'examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'"  ***Id.***, ¶47 (citation omitted).  Whether the circuit court's findings constitute prejudice to the owners, however, is a question of law that we review de novo.  *See* ***LaRene v. LaRene***, 133 Wis. 2d 115, 120-21, 394 N.W.2d 742 (Ct. App. 1986).

8

¶19     Partition is codified in chapter 842 of the Wisconsin Statutes.  *See* WIS. STAT. ch. 842 (2021-22).[5]  WISCONSIN STAT. § 842.02 allows a person with "an interest in real property jointly or in common with others" to "sue for judgment partitioning such interest."  Sec. 842.02(1).  That person may seek a judgment of partition and, alternatively, "if partition is impossible, judicial sale of the land or interest, and division of the proceeds."  Sec. 842.02(2).  If the circuit court finds that "partition cannot be made without prejudice to the owners," it may order the land sold.  WIS. STAT. § 842.17(1).  Partition is thus impossible if it cannot be made without prejudice to any of the owners.  *See **Boltz v. Boltz**,* 133 Wis. 2d 278, 281-83, 395 N.W.2d 605 (Ct. App. 1986).  Prejudice to the owners occurs if partition results in substantial economic loss.  ***Id.*** at 283; *see also **Marshall & Ilsley Bank v. De Wolf***, 268 Wis. 244, 247-48, 67 N.W.2d 380 (1954) ("'[P]rejudice to the owners' [occurs if] the value of the share of each in case of a partition would be materially less than his [or her] share of the money equivalent that could probably be obtained for the whole." (citation omitted)).

¶20     Erin and the Holly Trust first argue that the circuit court erred by concluding that partition was impossible.  They assert that the Crescent ordinance provides that the town board may give a variance, that the town intends to eventually have the same lake frontage ordinance as Oneida County, and that the town has allowed partitions compliant with the Oneida ordinance in the past.  As support, Erin and the Holly Trust rely solely on Knutson's testimony regarding the town board's inconsistent application of the town's ordinances and the town board's purported likelihood of applying the Oneida ordinance to this case.

---

[5] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶21 Erin and the Holly Trust also argue that Knutson's testimony distinguishes this case from **Anderson**. They reason that, in **Anderson**, the town refused to grant a requested variance or "back off of its shoreline ordinance in any way," whereas here, the Town of Crescent has granted variances for other properties in the past and, they contend, will likely grant the parties a variance to partition the Kuczmarski property in compliance with the Oneida ordinance. Indeed, in their reply, Erin and the Holly Trust argue that the circuit court did not have the legal authority to "strip[]" the town of its right to "interpret, amend, rescind, and enforce" its ordinance and instead should have ordered the parties to apply for a variance.

¶22 As our supreme court made clear in **Anderson**, pursuant to WIS. STAT. § 236.45(2)(ac), a town may enact a subdivision ordinance that is more restrictive than a county zoning ordinance. *See **Anderson***, 395 Wis. 2d 351, ¶¶49-50. In **Anderson**, the petitioner sought to subdivide his property into two lots, one with 195 feet of lake frontage and the other with 163.43 feet of lake frontage. *Id.*, ¶5. The Town of Newbold's ordinance required each lot to include at least 225 feet of lake frontage. *Id.*, ¶6. Because the petitioner's proposed subdivision did not comply with the town's ordinance, the town board denied the petitioner's request to subdivide his property. *Id.* On appeal, the petitioner argued the town's ordinance was unenforceable because the town did not have the authority to enact an impermissible shoreland zoning regulation under WIS. STAT. § 59.692. ***Anderson***, 395 Wis. 2d 351, ¶34.

¶23 The Wisconsin Supreme Court concluded that in denying the petitioner's proposed subdivision, the town board correctly enforced its subdivision ordinance because the town's ordinance was "a permissible exercise of the [t]own's subdivision authority pursuant to WIS. STAT. § 236.45."

*Anderson*, 395 Wis. 2d 351, ¶3. The court determined the town's ordinance was a subdivision ordinance enacted under § 236.45, as opposed to a zoning ordinance enacted under WIS. STAT. § 59.692. *Anderson*, 395 Wis. 2d 351, ¶¶47-49. Under § 236.45, a town can enact subdivision ordinances that are more restrictive than the provisions of WIS. STAT. ch. 236. *Anderson*, 395 Wis. 2d 351, ¶28. The court explained that while zoning and subdivision authority both regulated lot size, nothing in chapter 236 indicated that shoreland areas were exempt from subdivision regulation. *Id.*, ¶49. As a result, the town had the authority to enact a more restrictive ordinance under its subdivision authority in § 236.45. *See Anderson*, 395 Wis. 2d 351, ¶50.

¶24 Here, the circuit court correctly applied *Anderson* and determined that the Crescent ordinance applied to the partition of the Kuczmarski property. Despite this controlling law, Erin and the Holly Trust essentially argue that the court should not have followed *Anderson* and should not have applied the Crescent ordinance because the town *might have* granted a variance *if* the parties requested one. None of the parties here, however, ever applied for a variance from the town board. Thus, the court had no legal basis to ignore the Crescent ordinance based on any possibility that the town might not enforce the ordinance, given that *Anderson* required the court to apply the otherwise-lawful Crescent ordinance. Erin and the Holly Trust make no further attempts to distinguish *Anderson* to support their argument that the court should not have applied it. Nor do they point us to any other authority to support their argument that the Crescent ordinance did not apply in this case.

¶25 Moreover, Knutson's trial testimony does not support Erin and the Holly Trust's argument that the Town of Crescent would grant the parties a variance and likely apply the Oneida ordinance to future partitions—either

11

generally or for the Kuczmarski property specifically. Knutson is not "the town." Furthermore, and as the circuit court noted, nothing in Knutson's testimony suggested—much less established—that the town would amend its ordinance in the future "or that the Town will or will not do anything in the foreseeable future that might foreclose application of the current subdivision ordinance to the parcels in this case." Knutson testified that the Crescent ordinance requiring 225 feet of lake frontage remained the town's current ordinance. While Knutson testified that the town would *consider* a variance request or might *consider* amending its ordinance, he did not know—and he could not know—whether the town would actually grant a variance or amend its ordinance.

¶26 In short, nothing in Knutson's testimony provided the circuit court with a basis to find that the Town of Crescent would grant the parties a variance to solve the partition impossibility or would amend its ordinance to conform to the Oneida ordinance. Thus, the court correctly found that because it could not speculate as to the town's actions regarding the application of the Crescent ordinance, the Crescent ordinance applied. Accordingly, the court correctly concluded it had to follow *Anderson* and apply the Crescent ordinance to the partition of the Kuczmarski property.

¶27 The notion that a property owner can make a partition "possible," in lieu of the sale of a property, merely on the basis that a town *may* grant a variance, without that owner actually ever seeking a variance, is specious. It is plainly an affront to the principal holding in *Anderson*. Indeed, the only way to have the town state an actual position on anything regarding the Kuczmarski property was to have petitioned the town to act in the manner that Erin and the Holly Trust now assert to be "likely." In other words, a property owner cannot benefit from failing to seek the very type of variance relied upon in *Anderson*—which, *if granted*,

12

would of course obviate the issue in this case—and then avoid the legal effect under *Anderson* of that variance being denied.

¶28    After the circuit court concluded that the Crescent ordinance applied, it correctly found that partition of the Kuczmarski property was impossible under that ordinance.  This conclusion is not in any real dispute.  The record is clear that the Kuczmarski property cannot be partitioned under the Crescent ordinance for the benefit of its four owners.  The ordinance requires lake lots to include at least 225 feet of lake frontage.  Both Rein and Vreeland testified that in any partition under the Crescent ordinance, only one lakefront lot could be created and three off-water lots could not be created.  For this reason, Rein testified it would not be possible to partition the Kuczmarski property among the four owners.  Erin and the Holly Trust did not dispute this testimony, insomuch as they presented no testimony on the application of the Crescent ordinance to a partition of the Kuczmarski property.  As the court noted, Erin and the Holly Trust's evidence focused only on whether partition was possible under *the Oneida ordinance*.

¶29    Additionally, Olson testified that based on the quality and quantity of the Kuczmarski property, it was impossible to equitably divide the property among the three siblings and the Holly Trust, even by attempting to reflect their differing percentage ownership interests.  Several witnesses also testified to the fact that a lakefront property was of significantly higher value and better quality than an off-water property.  Thus, even if the property could be separated into four lots, one owner would receive a high-quality, high-value lake lot, while the other three owners would receive lower-quality, off-water lots.  Setting aside the issue of being unable to satisfy the five-acre-minimum-lot-size requirement, because only one owner would receive a lake lot under the Crescent ordinance, the circuit court quite reasonably determined, in equity, that at least one owner would suffer

13

economic loss as a result of a partition of the Kuczmarski property. Because a partition of the Kuczmarski property results in economic loss to at least one owner, we agree, as a de novo matter, with the court's finding that at least one owner would be prejudiced as a result of the partition. *See LaRene*, 133 Wis. 2d at 120-21.

¶30 In sum, the circuit court correctly concluded that, under *Anderson*, the Crescent ordinance applied to the partition of the Kuczmarski property. It also correctly found that a partition of the Kuczmarski property is not possible under the Crescent ordinance because the four lots would not satisfy the requirements in the ordinance and, even if the property could be divided into four lots, one or more owners would invariably be prejudiced as a result of the partition. Accordingly, the court did not erroneously exercise its discretion by failing to order partition of the Kuczmarski property.

## II. The requested amended counterclaim and Jeffrey's garage

¶31 Erin and the Holly Trust next argue that the circuit court erred by "stay[ing]" their motion for leave to file an amended counterclaim and by determining that the Kuczmarski property could be sold with a portion of Jeffrey's garage on the property. They assert that Jeffrey created an encroachment, did not notify his siblings about the encroachment, and the encroachment reduced the value of the north parcel. As an initial matter, Erin and the Holly Trust do not point to anything in the record that shows they pursued their motion to file an amended counterclaim or that the court issued a decision that stayed the motion. Because the issue was not advanced in the circuit court, it is not properly before this court. *See State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997)

14

("The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal."). We will therefore not address it.

¶32 Also, as the circuit court noted, Erin and the Holly Trust did not litigate any issue regarding the garage during the trial. Jeffrey testified that he built a portion of his garage on the north parcel of the Kuczmarski property with his father's permission and that he long ago disclosed this fact to his siblings. Notably, Erin and the Holly Trust presented no testimony or other evidence disputing Jeffrey's testimony at trial. They also presented no evidence showing that the garage reduced the value of the north parcel. Consequently, the court could not take any action regarding the garage on the Kuczmarski property other than to order the sale of the property, including the portion containing part of the garage, as it was. The court did not erroneously exercise its discretion when it found that the Kuczmarski property could be sold with a portion of Jeffrey's garage on the property.

### III. Jeffrey and Elise's motion for sanctions for a frivolous appeal

¶33 As respondents, Jeffrey and Elise filed a motion for costs, attorney fees, and other fees as a sanction for Erin and the Holly Trust having brought a frivolous appeal under WIS. STAT. RULE 809.25(3). They argue that Erin and the Holly Trust had no basis in law or fact to support their position on appeal. They assert that Erin, the Holly Trust, and their counsel knew that: (1) the circuit court could not ignore *Anderson* and enter an order violating the Crescent ordinance; (2) it was impossible to partition the Kuczmarski property under the Crescent ordinance; and (3) the arguments regarding their counterclaims and the encroachment have no support in the record.

¶34    If this court finds an appeal to be frivolous, we "shall award to the successful party costs, fees, and reasonable attorney fees." WIS. STAT. RULE 809.25(3)(a). The awarded costs, fees, and attorney fees may be assessed fully against the appellant or the appellant's attorney or may be assessed so that the appellant and the appellant's attorney "each pay a portion of the costs, fees and attorney fees." RULE 809.25(3)(b). An appeal is frivolous under RULE 809.25(3)(a) if we find one or more of the following: (1) the appeal "was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another"; or (2) "[t]he party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." RULE 809.25(3)(c)1.-2.

¶35    Whether an appeal is frivolous is a question of law. *Howell v. Denomie*, 2005 WI 81, ¶9, 282 Wis. 2d 130, 698 N.W.2d 621. When determining whether an appeal is frivolous, this court "looks to what a reasonable party or attorney knew or should have known under the same or similar circumstances." *Id.* "[A]ll doubts about whether an appeal is frivolous must be resolved in favor of the appellant." *Larson v. Burmaster*, 2006 WI App 142, ¶48, 295 Wis. 2d 333, 720 N.W.2d 134. In order to award costs and attorney fees, we "must conclude that the entire appeal is frivolous." *Howell*, 282 Wis. 2d 130, ¶9.

¶36    Here, we agree with Jeffrey and Elise that Erin and the Holly Trust should have known that no reasonable basis existed to support their positions on

16

appeal.[6] First, Erin and the Holly Trust have no reasonable basis to argue that the circuit court erred by finding partition was impossible because the Crescent ordinance clearly applies under *Anderson*. They essentially argue, without support, that the court should have ignored *Anderson* and applied the Oneida ordinance in a partition of the Kuczmarski property. Their only argument for doing so is a specious one that their own failure to seek a variance from the town somehow places them in a better position, under the law, than the petitioner in *Anderson*, whose variance petition had been denied. *See supra*, ¶¶24-27. To the extent this argument was intended as being for an extension, modification or reversal of existing law, it lacked any reasonable, good faith basis.

¶37 Furthermore, as previously explained, the record is clear that a partition under the Crescent ordinance was impossible, and Erin and the Holly Trust did not—and seemingly could not—advance any argument to the contrary. *See supra*, ¶¶28-29. Erin and the Holly Trust do not point to any facts in the record that show a partition under the Crescent ordinance was possible because they presented no testimony or other evidence at trial regarding the application of the Crescent ordinance to the Kuczmarski property.

¶38 Second, Erin and the Holly Trust have no reasonable basis to argue that the circuit court erred by "stay[ing]" their motion for leave to amend their counterclaim. As an initial matter, the record contains no order from the court that

---

[6] While our analysis that follows stands on its own merit, we would be remiss to not point out that Erin and the Holly Trust's written objection to Jeffrey and Elise's thorough motion for costs contains little substantive analysis as to the arguments made in that motion, which largely track the rationale we employ here regarding the lack of any reasonable basis in law or equity for their appeal. To be clear, we do not, and need not, reach any conclusion that the appeal was frivolous in the sense that it was done in bad faith, solely for purposes of harassing or maliciously injuring Jeffrey and Elise.

stayed, granted, or denied the motion. In any event, Erin and the Holly Trust have no reasonable basis to argue that the court erred by finding that the Kuczmarski property could be sold with a portion of Jeffrey's garage on the property. The record shows the court could take no action with respect to the garage because Erin and the Holly Trust did not pursue any issue regarding the garage at trial and never disputed Jeffrey's testimony regarding the garage.

¶39    In short, Erin, the Holly Trust, and their attorney should have known, based on *Anderson*, the record in this case, and the arguments they actually advanced in the circuit court, that no reasonable basis existed, in either fact or law, to support their positions on appeal. Thus, we conclude that Erin and the Holly Trust's entire appeal is frivolous. We therefore remand the matter to the circuit court to determine the amount of costs, fees, and reasonable attorney fees incurred by Jeffrey and Elise in responding to Erin and the Holly Trust's appeal and to issue an award accordingly.

*By the Court.*—Order affirmed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.